UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
JOSEPH SZYMASZEK,

                                                  Plaintiff,

    -v.-

                                                                    9:06-CV-719
JACK MAHAR, Sheriff, *et al.,*                                  (TJM/GJD)

                                                  Defendants.

JOSEPH SZYMASZEK
04-A-5378
Plaintiff, *pro se*

CRYSTAL R. MENNILLO, ESQ.
Attorney for City of Troy
ASA S. NEFF, ESQ.
Attorney for Rensselaer County defendants
ROBERT P. ROCHE, ESQ.
Attorney for defendants Albany County, Campbell, Teabout & Kramek

THOMAS J. McAVOY, Senior United States District Judge

## MEMORANDUM DECISION and ORDER

    In this amended civil rights complaint, plaintiff claims that defendants failed to produce plaintiff for arraignment on an arrest warrant from Rensselaer County that was filed against plaintiff as a detainer while he was incarcerated in the Albany County Correctional Facility on unrelated charges. Amended Complaint (AC)(Dkt. No. 60). Plaintiff claims that the failure to produce him for arraignment prevented him from making bail on the Albany County charges, and after his conviction and incarceration on the Albany County charges, prevented him from being eligible for Temporary Release programs. Plaintiff alleges that the Albany County defendants also prevented him from using the law library in violation of plaintiff's right to access to courts. *Id.* Plaintiff seeks substantial monetary relief. AC at p.35.

Presently before the court,[1] are various motions. Defendant City of Troy has filed a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) or in the alternative for summary judgment pursuant to FED. R. CIV. P. 56. (Dkt. No. 57). Plaintiff has responded in opposition to that motion, and the City of Troy has filed a reply. (Dkt. Nos. 66, 80). Defendants Rensselaer County and Sheriff Jack Maher (the Rensselaer County defendants) have also filed a motion for summary judgment. (Dkt. No. 75). In "response" to the Rensselaer County defendants' motion, plaintiff filed what he has labeled[2] a cross-motion for summary judgment as against all defendants. (Dkt. No. 82). The Rensselaer County defendants interpreted plaintiff's cross-motion as "Plaintiff's Opposition to the Summary Judgment Motion" and have filed a "reply." (Dkt. No. 87). The City of Troy has responded to plaintiff's cross-motion. (Dkt. No. 91). On September 4, 2008, plaintiff filed a document entitled "Newfound Evidence." (Dkt. No. 98).

This order will only address the City of Troy's motion for summary judgment, plaintiff's opposition to the motion, and the City of Troy's reply. (Dkt. Nos. 57, 66, 80). To the extent that the plaintiff's "cross-motion" discusses the City of Troy, the court will also consider the arguments in that document. The court will issue a separate order at a later date on the other pending motions.

---

[1] The parties are advised that the referral to a Magistrate Judge as provided for under Local Rule 72.3 has been rescinded for purposes of this motion, and as such, any appeal taken from this order, if appropriate, will be to the Court of Appeals for the Second Circuit.

[2] Although plaintiff has labeled this document as a cross-motion for summary judgment, it is not clear that he is actually arguing for "summary judgment." (Dkt. No. 82). Throughout the document plaintiff states both that "these defendants are guilty of violating plaintiff's constitutional rights," however, he also states that "his claim under the above circumstances can be proven at a jury trial . . . ." (Dkt. No. 82 at 6). If plaintiff is arguing that there are questions of fact for trial, he cannot be arguing for judgment as a matter of law under Rule 56. He refers both to the court granting summary judgment and to a "jury of his peers" finding defendants guilty of the violations or being able to prove these facts "at trial." *See e.g.* (Dkt. No. 82 at 10, 11, 12, 13, 15, 16, 18). The court understands of course that, being *pro se*, plaintiff is entitled to every liberality. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, No. 06-1590, 2008 U.S. App. LEXIS 17113, *15 (2d Cir. Aug. 12, 2008)(citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2003)). Thus, this court will construe plaintiff's "motion" in the light most favorable to the plaintiff.

2

**DISCUSSION**

**1.     Motion to Dismiss or for Summary Judgment**

   **A.  Rule 12(b)(6) - Failure to State a Claim**

   To survive a motion to dismiss, the plaintiff must provide "the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008)(quoting *inter alia ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). Plaintiff's factual allegations must be sufficient to give the defendant "fair notice of what the claim is and the grounds upon which it rests." *Id.* (citing *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*,507 F.3d 117, 121 (2d Cir. 2007).

   When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint. *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (citations omitted). The court must heed its particular obligation to treat pro se pleadings with liberality. *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005); *Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999)(per curiam). In deciding a motion to dismiss, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits and any statements or documents incorporated into the complaint by reference. *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (citing *Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir. 1989)). Finally, in the case of a motion to dismiss involving a *pro se* plaintiff, the court may look beyond the complaint to plaintiff's opposition papers. *See Locicero v. O'Connell*, 419 F. Supp. 2d 521, 525 (S.D.N.Y. 2006) (citation omitted).

   **B.  Rule 56 - Summary Judgment**

   Summary judgment may be granted when the moving party carries its burden of showing the

absence of a genuine issue of material fact. FED. R. CIV. P. 56; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) (citations omitted). "Ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion." *Id*. However, when the moving party has met its burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

At that point, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Id*. A dispute about a genuine issue of material fact exists if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

In this case, defendant City of Troy has moved in the alternative either to dismiss pursuant to FED. R. CIV. P. 12(b)(6) or for summary judgment pursuant to FED. R. CIV. P. 56. (Dkt. No. 57). In addition, plaintiff attached a vast number of documents to his amended complaint. The court finds that the claims against the City of Troy may be dismissed under either standard articulated above, but the court will treat the motion as one for summary judgment since there are so many documents that have been submitted.

**2.     Facts**

Plaintiff alleges that on September 23, 2003, the Rensselaer County Sheriff's Department "lodged an Arrest Warrant" against the plaintiff, who was a pre-trial detainee on unrelated charges in

4

the Albany County Correctional Facility. AC ¶ 1. The Rensselaer County charges involved burglary.[3] Plaintiff states that he was never taken before a court to be arraigned on the Rensselaer County charges, and the warrant remained lodged as a detainer against plaintiff until the charges were ultimately adjourned in contemplation of dismissal on November 28, 2005. AC ¶ 60. Plaintiff claims that in the interim, he consistently attempted to get the issue of the pending arrest warrant resolved, but was initially denied access to the law library and trained law clerks in the Albany County Jail. AC ¶¶ 9-18. Plaintiff claims that he was finally able to file motions pursuant to N.Y. CRIM. PROC. LAW §§ 30.30 and 180.80 on October 11, 2004. AC ¶ 19. Plaintiff was subsequently convicted in Albany County and incarcerated in New York State correctional facilities.[4] AC ¶ 20.

Plaintiff states that even after his conviction and incarceration on the Albany County charges, he continued to attempt to resolve the issue of the Renssalaer County arrest warrant that was still lodged as a detainer against him. AC ¶¶ 27-46. Plaintiff states that he wrote to various legal assistance and bar associations as well as private attorneys in an attempt to get representation to resolve this issue.   AC ¶¶ 29-46. Plaintiff states that on June 10, 2005, he finally received a positive response from Jerome K. Frost, Rensselaer County Public Defender, who told plaintiff to complete the Public Defender Application, and told plaintiff that the Public Defender's Office would make a motion to dismiss the pending charges. AC ¶¶ 45-46.

Plaintiff states that on July 5, 2005, plaintiff was denied temporary release due to the "OUTSTANDING RENSSELAER COUNTY WARRANT." AC ¶ 47. Plaintiff states that he was brought to the Troy Criminal Court on August 4, 2005, was represented by John Turi, Esq., and

---

[3] A copy of the warrant has been submitted as an exhibit to the Rensselaer County defendants' motion for summary judgment. (Dkt. No. 75, Ex. B at p.3).

[4] The Department of Correctional Services (DOCS) website indicates that plaintiff was originally received on October 12, 2004. http://www.docs.state.ny.us

5

appeared before the Honorable Christopher Maier. AC ¶ 51. Plaintiff states that Judge Maier asked plaintiff if he wanted bail set or he wanted to be "released on his own recognizance." *Id.* Plaintiff claims that he told Judge Maier that plaintiff had been denied his liberty for over twenty three months on the felony arrest warrant, and therefore, plaintiff was released[5] on his own recognizance on the Rensselaer County charges. *Id.*

Plaintiff then states that on August 16, 2005, plaintiff wrote to Attorney Turi, complaining that Attorney Turi did not file the motion to dismiss as "his boss" told plaintiff he was going to do. AC ¶ 54. Plaintiff then states that his constitutional rights were violated at the August 4, 2005 court proceedings. *Id.* Plaintiff claims that on October 11, 2005, he was again denied participation in the Temporary Release Program because of the still-outstanding Rensselaer County arrest warrant. AC ¶ 56. Plaintiff states that his Corrections Counselor told him that the Rensselaer County arrest warrant was still lodged against plaintiff, "even though the Plaintiff was Released on Recognizance." *Id.* Plaintiff claims that his Corrections Counselor was of the opinion that "someone in Rensselaer and Albany Counties [was] Intentionally Causing Severe Harm and Liberty damages to the Plaintiff." *Id.*

Plaintiff states that on November 28, 2005, he was again transported to the Troy Criminal Court, but he was represented by a different Public Defender, whose name plaintiff does not know.[6] Plaintiff claims that he was told by this attorney that the Rensselaer charges were going to be dismissed because of "Time Limitations." *Id.* Plaintiff also claims that the Assistant District Attorney, Jane Doe # 6, told plaintiff that the City of Troy made a mistake in filing the Rensselaer County

---

[5] When plaintiff states that he was "released" on his own recognizance, the court assumes that he is referring only to the Rensselaer County charges because clearly plaintiff was not released after the August 4, 2005 court appearance since he was incarcerated on an unrelated Albany County conviction. Plaintiff himself states that after the August 4, 2005 court appearance, he was transported back to New York State custody. AC ¶¶ 52-54.

[6] Plaintiff refers to his new attorney as "John Doe # 9." AC ¶ 60. This individual is not named as a defendant, so it is irrelevant that plaintiff does not name him in the amended complaint.

6

charges, "due to the Judicial Misconduct of the Honorable Henry Bauer,"[7] who was no longer a Judge in the City of Troy.[8] *Id.* Plaintiff states that he was given a dismissal order signed by Judge Maier. *Id.* Plaintiff then told his attorney that plaintiff would be filing this civil rights action. *Id.* Plaintiff also states that he told the Assistant District Attorney that the warrant upon which plaintiff was "Released on Recognizance" was still lodged against plaintiff according to the New York State Department of Corrections computer. *Id.*

Plaintiff states that on December 21, 2005, he received a copy of a letter from S. Walling, an Inmate Records Coordinator at the Watertown Correctional Facility, to the Rensselaer County Sheriff's Department, stating that the facility had received the "Adjourned [sic] In Contemplation of Dismissal in Six Months." AC ¶ 63 & Ex. 42.[9] The letter further stated that "We are therefore, withdrawing the Arrest Warrant and are Returning it to you." *Id.* Notwithstanding this letter, plaintiff states that on January 26, 2006, at his "Quarterly Review" at Watertown Correctional Facility, plaintiff was told by his Corrections Counselor that the Rensselaer County arrest warrant was still lodged against plaintiff, and he would still be denied participation in the Temporary Release Program as a result. AC ¶ 64. Plaintiff states that after the January 26, 2006 Quarterly Review, plaintiff sent a letter to the records coordinator at Watertown Correctional Facility, telling him that the Rensselaer County arrest warrant was still being held against him, and plaintiff asked the records coordinator for a response. AC ¶ 65. Plaintiff states that on January 27, 2006, he received a letter from "S. Walling's

---

[7] Plaintiff originally named former City Court Judge Bauer and City Court Judge Christopher Maier as well as District Attorney Patricia DeAngelis. By order dated September 1, 2006, this court dismissed these defendants based upon absolute judicial/prosecutorial immunity. (Dkt. No. 6).

[8] Judge Bauer was removed from the City Court bench in 2004.

[9] A copy of the December 21, 2005 letter is attached to the amended complaint as an exhibit. Unfortunately, this exhibit does not contain a number, but it appears between Exs. 41(b) and 43(a). Thus, the court will assume that it is Exhibit 42.

Supervisor, K. Moseley." AC ¶ 66. In this letter, plaintiff states that there was only one line of type, stating "DONE." *Id.* At the end of the amended complaint, plaintiff states that he asked for documents on April 28, 2006 pursuant to the Freedom of Information Act, but it appears that plaintiff is claiming that he did not receive the documents in a timely manner. AC ¶¶ 67-68. Although plaintiff states that "this is a violation of New York State Law," this statement appears to be irrelevant to plaintiff's amended complaint.

3.  **Service of Process**

Rule 4 of the Federal Rules of Civil Procedure requires that a defendant be served within 120 days of filing the complaint. FED. R. CIV. P. 4(m). Under Rule 4(j)(2), a State or Local Government such as the City of Troy may be served by delivering a copy of the summons and complaint to its chief executive officer or serving the summons and complaint pursuant to the State[10] law governing such a defendant. The failure to serve a defendant within 120 days of filing the complaint may be a basis for dismissal of the complaint unless good cause is shown for an extension of that time. FED. R. CIV. P. 4(m). When a plaintiff is *pro se* and proceeding *in forma pauperis,* he may rely upon the Marshal to properly serve the summons and complaint. *Romandette v. Weetabix*, 807 F.2d 309, 311 (2d Cir. 1986).

In this case, defendant City of Troy argues that "Plaintiff" failed to mail a copy of the summons and complaint to the defendant or any of its agents or officers. City of Troy Mem. at 4. The court would first point out that the "plaintiff" did not serve the papers, and he was not required to do so. Plaintiff is *pro se **and*** proceeding *in forma pauperis*. Thus, it is the U.S. Marshal's responsibility to

---

[10] Under New York law, service upon a city, other than New York City, may be made by delivering the summons to the mayor, comptroller, treasurer, counsel or clerk. N.Y. CIV. PRAC. L. & R § 311(a)(3). If the city does not have these officers, the summons may be delivered to an officer who performs the corresponding function under another name. *Id.*

8

properly serve the summons and complaint. *Romandette, supra*. A review of the docket sheet in this action shows that on March 5, 2007, the Summons was "Returned Unexecuted as to County of Rensselaer, City of Troy, [and] Jack Maher." (Dkt. No. 24). A review of the filed documents shows that plaintiff's misunderstanding of the proper individuals to serve in order to properly effect service on the City of Troy is related to his general misunderstanding of the differences between the City and the County.

When plaintiff completed the form for the U.S. Marshal, plaintiff indicated that the City of Troy could be served by mailing the summons and complaint to the **County** Executive. (Dkt. No. 24 at 3). However, the form also states that "Plaintiff relies on the Court to make sure this is the proper party to serve the City of Troy." *Id.* In its motion, the City of Troy states that it only became aware of this lawsuit when the Rensselaer County General Counsel's Office forwarded the pleading to the City of Troy Corporation Counsel. City of Troy Mem. at 4.

Based on all the activity in this case since the time that the U.S. Marshal filed the statement that the Summons was returned unexecuted as to certain defendants, it would have been very difficult for the plaintiff to realize that the City of Troy had not been properly served. In fact, the City of Troy answered both amended[11] complaints in addition to filing its motion to dismiss. (Dkt. Nos. 18, 57, 69). In *Romandette*, the Second Circuit stated that Rule 4 is to be construed liberally "'to further the purpose of finding personal jurisdiction in cases in which the party has received actual notice.'" 807 F.2d at 311. Only one of the cases cited by the City of Troy involves a *pro se* plaintiff, and that plaintiff was **not** incarcerated and was **not** proceeding *in forma pauperis*. *See Morrison v. New York State Div. for Youth Children & Family Servs.*, 98-CV-643, 2000 U.S. Dist. LEXIS 6049, *8-9

---

[11] Although the City of Troy's first answer did not refer to the "amended" complaint, the court notes that plaintiff had already amended his complaint pursuant to an order of this court, prior to the court ordering service. (Dkt. Nos. 6, 7).

9

(N.D.N.Y. April 25, 2000). In fact, in *Morrison*, the court denied *in forma pauperis*, required plaintiff to pay the entire filing fee, and ordered the *pro se* plaintiff to effect service. *See* Dkt. No. 3 in 98-CV-643.

In this case, clearly there has been absolutely no prejudice to defendant City of Troy. In any event, if the court were to dismiss, the dismissal would be without prejudice. FED. R. CIV. P. 4(m). In the alternative to dismissal without prejudice, Rule 4 provides that the court can order that service be made within a specified time. Finally, if the plaintiff shows good cause for failure to serve, the court ***must*** extend the time to serve for an appropriate period. *Id.* Defendant City of Troy argues that plaintiff has not shown "good cause." The Second Circuit, however, stated that the plaintiff in *Romandette* showed "good cause" because he relied upon service by the U.S. Marshal. 807 F.2d at 311. Plaintiff in this case was clearly relying on the U.S. Marshal to effect proper service on the City of Troy. If this court were to dismiss this action, the court would extend the time by which plaintiff could request the U.S. Marshal re-serve the City of Troy.

There is absolutely no reason in this case to dismiss the case without prejudice for failure to serve process or to force plaintiff to re-serve the City of Troy. This is particularly true because the City of Troy has argued for dismissal on an alternative, and meritorious, basis. Thus, the court will not dismiss this action for failure to serve, rather, it will proceed to consideration of the merits of plaintiff's claim against the City of Troy.

### 4.      **Municipal Liability**

A municipality such as the City of Troy may be held liable as a "person" within the meaning of section 1983. *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690 (1978). However, in order for the municipality to be found liable, the civil rights violation in question must have been caused by the municipality's policy or custom. *Id.* at 694. The policy must be the "moving force"

behind the constitutional violation. *Bd. of the County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)(internal quotations omitted). Plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a causal connection between the municipal action and the deprivation of federal rights. *Id.*

When a plaintiff bases his claims of municipal liability on the acts of a public official, the plaintiff must show that the action was taken under color of state law, there was a constitutional or federal statutory right, there was causation, damages, and the municipality's "official policy" caused the constitutional injury. *Roe v. City of Waterbury*, No. 07-261, 2008 U.S. App. LEXIS 19286, *11 (2d Cir. Sept. 11, 2008)(citing *Monell*, 436 U.S. at 691). A municipality may not be found liable simply because one of its employees committed a tort. *Id.* (citing *Brown*, 520 U.S. at 405). Where the plaintiff claims that the municipality has not directly inflicted an injury, but has "caused" an employee to do so, "rigorous standards of culpability and causation must be applied" so that the municipality is not held liable solely for the actions of an employee. *Brown*, 520 U.S. at 405.

Where the plaintiff seeks to hold a municipality liable for a single decision by a municipal policy maker, the plaintiff must show that the official had final policymaking power. *Roe v. City of Waterbury*, 2008 U.S. App. LEXIS 19286 at *12 (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988)). The challenged actions must also be within that official's area of policymaking authority. *Id.* Thus, the official must be a final policymaker with respect to the particular conduct challenged in the lawsuit. *Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000). Whether the official has final policymaking authority is a legal question that is determined based upon state law. *Id.*

Liability based on indirect causation may also be established by showing that the municipality acquiesced in a "longstanding practice or custom" constituting the "standard operating procedure" of

the local governmental entity. *Id.* at 61.  Plaintiff may also show a municipal custom or policy by showing that the policymakers failure to train their subordinates amounts to "deliberate indifference" to the rights of those who come into contact with those individuals. *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 478 (E.D.N.Y. 2002).  Deliberate indifference may be shown by evidence that the municipality had notice of, but repeatedly failed to make a meaningful investigation into charges that its "'agents were violating citizens' constitutional rights.'" *Id.* (citing *inter alia DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998)).

However, the "mere assertion" that the municipality has a custom or policy is insufficient in the absence of allegations of fact tending to at least support an inference circumstantially. *Id.* (citing *inter alia Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993)).  An official policy, practice, or custom cannot be inferred from a single incident against a municipal employee who is not vested with policy-making authority. *Id.* (citing *City of Oklahoma v. Tuttle*, 471 U.S. 808, 823-24 (1985); *Dwares*, 985 F.2d at 100; *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991).

In this case, plaintiff seeks to hold the City of Troy liable because Rensselaer County Sheriff Jack Mahar did not transport plaintiff to court to appear on the September 23, 2003 arrest warrant. (Dkt. No. 66 at ¶ 6)(Plaintiff's Opposition to City of Troy Motion).  Plaintiff also claims that the City of Troy is liable because former City Court Judge Bauer signed the arrest warrant but did not send it to the District Attorney. *Id.* at ¶¶ 7-8.  Plaintiff claims that Judge Bauer's removal from the bench somehow proves plaintiff's allegations. *Id.* ¶ 7 at p.5.  Plaintiff claims this caused him to be "falsely imprisoned." *Id.* at ¶ 6.  The court notes that in plaintiff's opposition papers, he mentions that City of Troy Police Officers somehow questioned "defendant's [sic] without counsel." *Id.* ¶ 11 at p.8.  This is the first time plaintiff mentions this alleged fact, and it has nothing to do with his complaint that he was detained without arraignment for 23 months on the September 23, 2003 warrant.

12

Plaintiff has not established that there is a question of fact relative to municipal liability.  First, no matter how plaintiff tries, he cannot establish that Jack Mahar, the Sheriff of **Rensselaer County** is a policymaker for the City of Troy.  Plaintiff continues to state that the City of Troy and the County of Rensselaer are "bound" together, but this simply is not the case under state law.  The County Sheriff is a "county officer." *Bardi v. Warren County Sheriff's Dep't*, 194 A.D.2d 21, 23, 603 N.Y.S.2d 90, 92 (3d Dep't 1993).  The County Sheriff is elected pursuant to New York County Law  § 400(1) and has "general duties" as prescribed in New York County Law § 650.  Section 650(1) of the New York County Law states that the "sheriff shall perform the duties prescribed by law as an officer of the court and conservator of the peace within the county.  He shall perform such additional and related duties as may be prescribed by law and directed by the board of supervisors or the county legislature." N.Y. COUNTY LAW § 650(1).  He does not, however, make policy for the City of Troy, regardless of whether he might be in charge of having inmates transported to court.  The Rensselaer County Sheriff's Department is simply not an "administrative arm" of the City of Troy, and the County Sheriff does not make policy for the City.  Thus, plaintiff cannot show that his rights have been violated by the municipal policy or custom of the City of Troy, based on allegations that the Rensselaer County Sheriff violated plaintiff's constitutional rights.

Plaintiff also claims that the City of Troy should be liable because former City Court Judge Bauer was routinely violating defendants' rights, which caused him to be removed from the bench. Plaintiff claims that the City of Troy Police Chief Nicholas Kaiser did not investigate any of plaintiff's claims, and that Chief Kaiser had the authority to "write a directive" to stop Judge Bauer's violations. Plaintiff cites the New York Court of Appeals case that affirmed the Judge's removal by the State

Commission on Judicial Conduct.[12] *In re Bauer*, 3 N.Y.3d 158, 785 N.Y.S.2d 372, 818 N.E.2d 1113 (2004).

Plaintiff's argument cannot succeed. The court would first point out that in *Estes-El v. Town of Indian Lake*, 954 F. Supp. 527, 535-36 (N.D.N.Y. 1997), the court held that a Town Justice was not a policymaker for the Town of Indian Lake. The court based its analysis on its reading of *Warner v. Orange County Dep't of Probation*, 95 F.3d 202 (2d Cir. 1996). *Id.* The court in *Estes* pointed out that when a municipal judge enforces state law, he or she does not act as a municipal officer or lawmaker, but rather "serves only to effectuate ***state*** policies." *Id.* at 536 (citing *Warner*, 95 F.3d 202, 1996 WL 507172 at *8 n.7)[13](emphasis added). The court in *Estes* found that the Town was not responsible for the judge's conduct when he acted in his judicial capacity.

In this case, it is unclear how plaintiff claims that the City of Troy Chief of Police had any authority to "write a directive" to stop Judge Bauer's actions. The case cited by plaintiff shows that it was the Commission on Judicial Conduct of the State of New York that was charged with investigating the complaints against former Judge Bauer. He was investigated and removed from the bench by the Commission, whose action was affirmed by the New York Court of Appeals. Clearly, the City of Troy was not responsible for Judge Bauer's actions, even assuming that these actions had anything to do with plaintiff's violation.[14]

In *Bliven v. Hunt*, 478 F. Supp. 2d 332, 338-39 (E.D.N.Y. 2007), the plaintiff argued that even though Family Court judges were State employees, they were "simultaneously municipal

---

[12] Judge Bauer was suspended by order of the New York Court of Appeals on May 11, 2004. *In re Bauer*, 2 N.Y.3d 782, 780 N.Y.S.2d 307, 812 N.E.2d 1256 (2004).

[13] The opinion in *Warner* was later "withdrawn," but this does not affect this court's analysis. The footnote from *Warner* cited by the court in *Estes* was not part of the holding of the case.

[14] Although not relevant to this decision, plaintiff is not claiming that the warrant was invalid.

14

policymakers." The court held that, although the Second Circuit had not specifically addressed the policymaking authority of judges, other circuits have determined that municipal judges do not act as policymakers and therefore, a municipality may not be liable based solely on the actions of its judges. *Id.* at 337 & n.2 (citing *inter alia Eggar v. City of Livingston*, 40 F.3d 312, 316 (9th Cir. 1994) (holding that a judge's failure to inform indigent defendants of their right to counsel did not amount to municipal policymaking). In *Bliven*, the court also pointed out that even though the judges may be appointed by the Mayor, the City does not have the authority to remove judges. *Id.* at 338-39. As stated above, judges may only be removed from office by the Chief Judge of the New York Court of Appeals upon recommendation of the State Commission of Judicial Conduct or by the New York State Senate on recommendation of the Governor. *Id.* at 339 (citing N.Y. CONST. Art. 6, §§ 22-23). Thus, the City cannot be liable through any actions or inactions by former City Court Judge Bauer.

The same is true for any actions that might have been taken, or not taken by the District Attorney's Office in failing to prosecute the Rensselaer County charges against plaintiff. A District Attorney in New York State represents the State, not the municipality (City or County) when prosecuting a criminal matter. *Baez v. Hennessy*, 853 F.2d 73, 76-77 (2d Cir. 1988); *Flores v. Levy*, 2008 U.S. Dist. LEXIS 72328, *46 (E.D.N.Y. Sept. 23, 2008).

## CONCLUSION

Plaintiff has cited no basis under which the City of Troy could be liable for any of plaintiff's alleged violations, and this court will dismiss this action as against the City of Troy.[15] This court will

---

[15] The City of Troy also argues that plaintiff's claim against the City may be dismissed because plaintiff failed to file a notice of claim pursuant to N.Y. GEN. MUN. LAW § 50(e). The court would point out that in Federal Court, the notice of claim statute applies only to State law claims, not to plaintiff's section 1983 federal constitutional claims. *See Weir v. City of New York*, 05 Civ. 9268, 2008 U.S. Dist. LEXIS 61542, *32-33 (S.D.N.Y. Aug. 11, 2008).

address the remaining motions in a separate order at a later date.  This court is making no findings at this time regarding the merits of plaintiff's claims against any of the other defendants.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that the City of Troy's motion to dismiss or for summary judgment (Dkt. No. 57) is **GRANTED**, and the case is **DISMISSED IN ITS ENTIRETY AS TO THE CITY OF TROY**, and it is further

**ORDERED**, that plaintiff's cross-motion (Dkt. No. 82) is **DENIED IN PART** at this time **ONLY TO THE EXTENT THAT IT REQUESTS SUMMARY JUDGMENT AS AGAINST THE CITY OF TROY.**

Dated: September 28, 2008

_Thomas J. McAvoy_
Thomas J. McAvoy
Senior, U.S. District Judge